UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                               Case No. 14-20007

Walter Bridges, Jr.,                                 Sean F. Cox
                                                            United States District Court Judge
    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

In this action, Defendant Walter Bridges, Jr. ("Defendant") was charged with drug and firearms offenses following his arrest on December 17, 2013, by officers with the Wayne County Sheriff's Department. The matter is currently before the Court on Defendant's Motion to Suppress, wherein he contends that the officers did not have reasonable suspicion to justify a *Terry* stop nor probable cause to arrest when they seized him. The Court heard oral argument and held an evidentiary hearing on April 2, 2014. For the reasons set forth below, the Court shall DENY the motion.

## BACKGROUND

Defendant was arrested on December 17, 2013. Defendant was charged in this action via a criminal complaint on December 18, 2013.

Defendant was later indicted on January 9, 2014. Defendant is charged with: 1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One); 2) possession of a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count Two); 3) possession of ammunition, in

violation of 18 U.S.C. § 922(g)(1) (Count Three); 4) possession with intent to distribute controlled substance, in violation of 21 U.S.C. § 841(a)(1); and 5) possession of firearm(s) in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The Indictment also contains forfeiture allegations.

On February 21, 2014, Defendant filed a Motion to Suppress Evidence.  (Docket Entry No. 16).  In it, Defendant contends that the police did not have reasonable suspicion to justify a *Terry* stop nor probable cause to arrest when they seized him.  Defendant asks the Court to suppress all of the evidence that was seized from him, as well as a statement later given by him, as fruits of an unconstitutional search and seizure.

The Government opposes the motion, asserting that the officers had reasonable suspicion that Defendant was involved in criminal activity to justify the investigatory stop.

With the issues so framed by the parties, this Court held an evidentiary hearing on April 2, 2014.  The Government called Corporal Jeffrey Neese as a witness at the evidentiary hearing and submitted one exhibit, a map of the area in question.  The Court finds Corporal Neese to be a highly credible witness.  Defendant also testified at the evidentiary hearing.  The Court finds that Defendant's testimony was not credible.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing and the other evidence presented, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court

makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

Corporal Jeffery Neese has been employed by the Wayne County Sheriff's Office for fourteen and a half years. In December of 2013, he was working patrol duty.

On December 17, 2013, Corporal Neese was working in the Central District, along side Deputy Robert Hall. The officers were both dressed in full police uniforms and were driving a fully-marked police vehicle.

At approximately 5:30 p.m., the officers were in the area of Charlotte Street and Second Avenue in Detroit, Michigan. At that time, it was dark outside and it was a cold winter evening.

The intersection of Charlotte and Second is close to the Cass Corridor and across from a low-income apartment complex. Corporal Neese testified that the area is known as a high-crime area and that he has made previous arrests in that area, including arrests for firearms offenses, drug crimes, and other offenses.

Corporal Neese was traveling slowly eastbound on Charlotte approaching Second Avenue when he saw a green Taurus parked on Charlotte. When he first saw that vehicle, he saw a silhouette of a person sitting in the drivers' side of the front seat. But as his patrol car approached the Taurus, the silhouette was suddenly gone. Corporal Neese then looked at the vehicle closer and saw a person hunching over in the front seat of the car. The person appeared to be trying to hide from the view of the patrol car. Based on his observations and his training and experience, Corporal Neese's initial thought was that it was a vehicle theft in progress.

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

Corporal Neese advised Deputy Hall of his concerns. The officers then activated the spotlight onto the Taurus and pulled up in front of, and to the side of, the Taurus.

There was a car parked directly in front of the Taurus and no cars parked behind it. Thus, the Taurus could not have pulled forward or to the side to leave, but could have backed up.

The officers exited their vehicle and approached the Taurus. Corporal Neese went to the driver's side of the car and Deputy Hall went around to the other side of the car. Corporal Neese asked Defendant to show him his hands and Defendant complied with that request and put his hands in the air. But when Corporal Neese asked Defendant what he was doing, and who owned the vehicle he was in, Defendant became irate. Corporal Neese again asked Defendant who owned the vehicle and asked to see Defendant's identification but Defendant refused to respond. Defendant swore at officers and told them to leave him alone.

When Corporal Neese asked Defendant to step out of the car, Defendant initially refused to comply, shouting "Fuck that, I'm not getting out" but eventually complied with the request to exit the car. Upon exiting the car, however, Defendant immediately swung a closed fist at Corporal Neese. Corporal Neese was able to dodge the blow and grabbed Defendant's arm as Defendant was attempting to flee the scene.

Deputy Hall, who had been on the other side of the car, came around to assist. A struggle ensured for approximately two minutes. During the struggle, a magazine fell from Defendant's person. Corporal Neese saw that the magazine was loaded and was concerned that Defendant was armed.

Defendant, who had continued to struggle, was then handcuffed. Corporal Neese performed a pat-down search for officer safety and found another magazine and two speed-

loaders on Defendant's person.

Corporal Neese called for back-up assistance because Defendant was still being non-compliant.

Corporal Neese then searched the Taurus. As Corporal Neese approached the Taurus to perform the search he saw, without entering the car, a hand grip of a semi-automatic weapon sticking out from under the driver's seat. He bent over and recovered that firearm, along with another firearm, a revolver.

Corporal Neese also observed that the ashtray was open and that there was an orange pill bottle in the ashtray. Corporal Neese opened the pill bottle and recovered what appeared to be seventeen rocks of cocaine.

The officers seized the firearms, ammunition, and drugs. The officers did not locate the keys to the Taurus, either on Defendant's person or in or around the car.

## ANALYSIS & CONCLUSIONS OF LAW

Police and citizens may have three types of permissible encounters: 1) the consensual encounter, which may be initiated without any objective level of suspicion; 2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and 2) the arrest, valid only if supported by probable cause. *United States v. Davis,* 514 F.3d 516, 607 (6th Cir. 2008).

Here, the initial encounter between Defendant and the officers was of the second variety – a non-consensual investigative stop. This "second type of encounter follows the framework of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny." *Id*. *Terry* permits a police officer briefly to detain a person or property for investigative purposes if the

officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur.  *Id*.

The parties agree that the Court's inquiry into the legitimacy of the investigatory stop is a two-pronged inquiry.  *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993); *United States v. Davis*, 514 F.3d at 608.  First, the Court must determine whether there was a proper basis for the stop, which is judged by examining whether the officers were aware of specific and articulable facts which gave rise to reasonable suspicion.  *Id.*  Second, the Court examines whether the degree of intrusion was reasonably related in scope to the situation at hand.  *Id*.

**I.     Was There A Proper Basis For The Initial Stop?**

This Court examines the "totality of the circumstances" in order to determine the reasonableness of the investigatory stop.  *United States v. Davis*, 514 F.3d at 608.

Here, Defendant was in a specific intersection that is a known high-crime area, where Corporal Neese has made previous arrests for firearms offenses, drug crimes, and other offenses. In addition, Defendant was sitting in a parked car in this high-crime area, while it was dark outside, and during a cold winter evening.  The Court may take into consideration the crime level of the area and these other contextual considerations.  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).  Although these factors may not, without more, give rise to reasonable suspicion, they are relevant to the reasonable suspicion calculus.  *United States v. Caruthers,* 458 F.3d 459, 467 (6th Cir. 2006).  Thus, these contextual considerations support the stop.

Moreover, Defendant's reaction to the approaching police vehicle supports a reasonable suspicion.  *United States v. Smith*, 427 F. App'x. 413, 419 (6th Cir. 2011).  The Supreme has explained that evasive behavior is a pertinent factor in determining reasonable suspicion.  *Id.*

(citations omitted). Obvious attempts to evade officers can support a reasonable suspicion and actual flight is not the only type of nervous, evasive behavior. *Id.* Furtive movements made in response to a police presence may properly contribute to an officer's suspicions.

Here, when Corporal Neese first saw the Taurus, he saw a silhouette of a person sitting in the drivers' side of the front seat. But as his marked patrol car approached the Taurus, the silhouette was suddenly gone. He then looked at the vehicle closer and saw a person hunching over in the front seat of the car. The person appeared to be trying to hide from the view of the patrol car. Based on his observations, and his training and experience, Corporal Neese suspected that it was a vehicle theft in progress.

"Police officers are permitted 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008) (quoting *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002)). Corporal Neese believed that Defendant's conduct was suspicious and that Defendant was trying to conceal illegal activity.

Based on the totality of the circumstances, this Court finds that Corporal Neese had a sufficient basis for temporarily detaining Defendant to determine whether or not he was actually engaged in wrongdoing.

## II.     Did The Degree Of Intrusion Exceed The Scope Of The Circumstances?

Having determined that Corporal Neese formed a reasonable suspicion before approaching Defendant in the Taurus, the Court moves on to the second inquiry. The second inquiry for the Court is whether the degree of intrusion was reasonably related in scope to the

situation at hand, which is "judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis*, 514 F.3d at 608. That includes determining whether: 1) the detention was sufficiently limited in time; and 2) if the investigative means used the least intrusive means reasonably available. *Id.*

The investigative means initially used here were minimally intrusive; when he first approached the car, Corporal Neese simply asked Defendant questions as to what he was doing and who owned the car.

"Further, incident to a valid *Terry* stop, a law officer may 'take steps to ensure that a person stopped is not armed.'" *United States v. Clemmons*, 38 F.3d 1217, 1994 WL 489649 at * 2 (6th Cir.1994) (citing *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986)). After Defendant became belligerent and refused to answer any questions, Corporal Neese ordered Defendant to exit the vehicle. Upon existing the vehicle, however, Defendant immediately swung a closed fist at Corporal Neese, escalating the encounter to a physical one. Moreover, while the officers struggled with Defendant a loaded magazine fell from Defendant's person. This Court concludes that the officers approached Defendant in a manner reasonably related to the scope of the situation presented, and responded reasonably as the encounter progressed.

### III. Was Defendant's Arrest Supported By Probable Cause?

In his motion, Defendant also argues that the police lacked probable cause to arrest him. (Def.'s Br. at 13). This argument is based upon Defendant's versions of the facts, under which the officers lacked a reasonable basis to stop him, and more importantly, immediately took him to the ground and handcuffed him, despite any combative conduct or resistance on his part.

The Court finds, however, that upon opening the car door Defendant immediately swung

8

a closed fist at Corporal Neese, and then struggled with the officers, and that during the struggle a loaded firearm magazine fell from Defendant's person.  The Court finds that the officers had probable cause to arrest Defendant.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion To Suppress Evidence is DENIED.

IT IS SO ORDERED.

                                            S/Sean F. Cox
                                            Sean F. Cox
                                            United States District Judge

Dated:  April 7, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 7, 2014, by electronic and/or ordinary mail.

                                            S/Jennifer McCoy
                                            Case Manager