UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff/Respondent,            Civil Case No. 16-12098
                                        Criminal Case No. 14-20007-01
v.
                                        Sean F. Cox
Walter Bridges, Jr.,                     United States District Court Judge

    Defendant/Petitioner,
_____/

**OPINION & ORDER DENYING § 2255 MOTION AND DECLINING TO ISSUE
CERTIFICATE OF APPEALABILITY**

In Criminal Case No. 14-20007, Petitioner Walter Bridges, Jr., was charged with drug and firearms offenses. A jury convicted him of all charges. Bridges now moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. For the reasons below, the Court denies the motion and declines to issue a certificate of appealability.

**BACKGROUND**

On December 17, 2013, Corporal Jeffrey Neese of the Wayne County Sheriff's Department and his partner, Robert Hall, were patrolling a high-crime area in Detroit, Michigan. Neese, a fourteen-year veteran of the Department, saw Bridges sitting in the driver's seat of a parked car. Neese looked away for a moment and when he looked back Bridges was gone. Pulling closer to the car, Neese saw that Bridges had hunched over, apparently trying to hide from the marked police car.

Neese concluded that a car theft might be in progress, and pulled up next to the car to prevent it from leaving. After Bridges refused to answer Neese's questions, Neese ordered him to exit the car. As soon as Bridges stepped out of the car, he threw a punch at Neese and attempted to flee. A

1

struggle ensued, during which a loaded handgun magazine fell out of Bridges's clothes. After arresting Bridges, the officers performed a pat-down search and recovered a second loaded magazine and two loaded "speed loaders."

Neese then searched Bridges's car. He found two handguns and a pill bottle containing seventeen rocks of cocaine, all in plain view.

The next day, Bridges met with ATF Agent Michael Yott. After receiving his *Miranda* rights, Bridges made several admissions about his possession of the firearms and narcotics. Yott recorded this interview.

On January 9, 2014, Bridges was indicted on five counts: (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One); (2) possession of a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count Two); (3) possession of ammunition in violation of 18 U.S.C. § 922(g)(1) (Count Three); (4) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count Four); and (5) possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Five). Attorney Andrew Densemo of the Federal Defender's Office was appointed to represent Bridges.

On February 21, 2014, Densemo filed a motion to suppress, arguing that Neese did not have reasonable suspicion to justify the initial stop or probable cause to arrest Bridges. The Court held an evidentiary hearing, at which Neese and Bridges testified about what happened before the arrest. On April 7, 2014, the Court issued an order and opinion, denying the motion to suppress. In its opinion, the Court found that Neese's testimony was highly credible and that Bridges's testimony was not credible. The Court held that several contextual considerations gave Neese reasonable suspicion that a crime was occurring and that there was a sufficient basis for temporarily detaining

Bridges to determine whether or not he was actually engaging in wrongdoing. The Court also held that Neese had probable cause to arrest Bridges.

Before trial, the Government offered Bridges two plea agreements. The first offer was a Rule 11 agreement that would have allowed Bridges to plead guilty to Count Five only. Under this deal, Bridges's sentence would have been capped at 60 months, but he would have waived his right to appeal the suppression issue. The second offer was a conditional plea that required Bridges to plead guilty to all charges, but would allow him to appeal the suppression issue. The terms of these offers and the consequences of their rejection were explained, on the record, at a status conference held on May 2, 2014. (ECF No. 59). Bridges rejected both offers. *Id*.

At trial, the Government offered testimony from Neese, Hall, Yott, and the person from whom one of the guns was stolen. The Government also admitted the recording of Bridges's inculpatory interview with Yott. Bridges testified in his own defense, and the Government called his brother as a rebuttal witness.

The jury found Bridges guilty on all five counts. The Court sentenced Bridges to 56 months imprisonment on Counts One through Four, all to be served concurrently, and 60 months on Count Five, to be served consecutive to Counts One though Four.

Bridges filed a direct appeal, challenging this Court's ruling on the suppression issue. On September 14, 2015, the United State Court of Appeals for the Sixth Circuit affirmed this Court's denial of Bridges's motion to suppress. (ECF No. 63). The United States Supreme Court denied Bridges's petition for a writ of certiorari on January 20, 2016. (ECF No. 66).

On June 8, 2016, Attorney Joan Morgan of the Federal Defender's Office filed a Motion to Vacate Sentence on behalf of Bridges, pursuant to 28 U.S.C. § 2255, raising a claim under *Johnson*

*v. United States*, 135 S.Ct. 2551 (2015). (ECF No. 67).

On August 29, 2016, the Court stayed this matter until the Supreme Court's decision in *Beckles v. United States.* (ECF No. 72).

On February 27, 2017, the Court granted Bridges's motion seeking to file an amended § 2255. (ECF No. 76). That amended motion was subsequently filed. (ECF No. 77). In his amended motion, Bridges added claims of ineffective assistance of counsel.

The Court allowed Joan Morgan to withdraw from the case after filing the amended motion. (*See* ECF No. 78). After Morgan's withdrawal, Bridges proceeded *pro se*. On March 6, 2017, the United States Supreme Court issued *Beckles v. United States*, 137 S.Ct. 886 (2017), wherein the Court ruled that the Federal Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to vagueness challenges under the Due Process Clause.

As such, on March 29, 2017, the Court concluded that there was no longer a reason to stay Bridges's Amended § 2255 motion and ordered the Government to file a response. The Government did so.

Thereafter, however, Bridges filed submissions wherein he requested: (1) additional time to file his reply brief, and (2) leave to supplement his Amended § 2255 Motion in order to include an additional claim, under *Mathis v. United States*, 136 S.Ct. 2243 (2016). The Court ruled that any reply brief filed in support of the claims raised in Bridges's Amended 2255 Motion must be filed no later than August 8, 2017, and ordered the Government to respond to Bridges's Motion to Supplement.

On August 10, 2017, Bridges filed a submission, stating that he wished "to drop the *Johnson* Motion and proceed with the Amended § 2255 Ineffective Assistance of Counsel (D.E. No. 77) and

Now [sic] *Mathis v. United States*, 136 S.Ct. 2243 (2016)." (D.E. No. 85).

On September 8, 2017, the Government filed its Response in Opposition to Bridges's Motion to Supplement. (D.E. No. 86). The Court determined that Bridges was entitled to an evidentiary hearing on his ineffective assistance of counsel claim and appointed counsel for that purpose. (ECF No. 87). The Government and Bridges filed supplemental briefing on the ineffective assistance of counsel issue and the Court held the evidentiary hearing on November 21, 2018.

## ANALYSIS

Petitioner's Motion to Vacate is brought pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

A petitioner seeking to set aside his sentence pursuant to 28 U.S.C. § 2255 has the burden of establishing his case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73,

76 (6th Cir. 2003). When a petitioner files a § 2255 motion, he must set forth facts establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

In his § 2255 proceeding, Bridges raised three claims: (1) a *Johnson* claim, which he has abandoned, (2) an ineffective-assistance-of-counsel claim, on which the Court held an evidentiary hearing, and (3) a claim under *Mathis*.

## I. Ineffective Assistance of Counsel

Bridges argues that Densemo was ineffective because he failed to properly investigate and prepare for the suppression hearing and trial, and because his advice caused Bridges to reject both plea offers.

**Bridges's Case at the Evidentiary Hearing**

At the evidentiary hearing, Bridges testified on his own behalf and claimed that Densemo failed to investigate his version of the events leading up to his arrest. Bridges stated that, on the day of his arrest, he had been texting with his daughter's mother, who "wished death" on him and wished that he would go to jail "for a long time." During their argument, the mother allegedly told Bridges that "he did not know who he was dealing with." Shortly thereafter, Bridges claims that Neese, the mother's new boyfriend, stopped Bridges to harass him, as he had repeatedly done in the past.

Bridges stated that, before the suppression hearing, he told Densemo about his history with Neese and requested that Densemo obtain police records from past interactions and the relevant text messages from the day of his arrest. Bridges felt that this evidence would impeach Neese's credibility at the suppression hearing. Densemo allegedly did not investigate as directed and replied that they should not bring up Neese's alleged relationship with the mother because they already had

6

a strong enough case.

Bridges also alleged that Densemo mishandled the plea negotiations and the two plea offers. For the Rule 11 offer, Bridges stated that Densemo did not review its terms with him or talk to him about the sentencing consequences. Densemo, knowing that Bridges was confident that the Court had wrongly denied the motion to suppress, allegedly discouraged Bridges from accepting the offer by telling him that "if you take the plea, no one will hear your case," and "you have a 90% chance of winning on appeal." As for the conditional plea, Bridges asserted that he did not accept it immediately and, the next time he talked to Densemo, it had been withdrawn.

After Densemo allegedly caused Bridges to reject the plea deals, Bridges asserts that Densemo advised him not to present a defense or testify at trial because he could then receive acceptance of responsibility credit at sentencing. Densemo supposedly said, "If you testify at trial, any chance of getting acceptance of responsibility is over."

Bridges also asserted that, because Densemo did not show him the recording of his interview with Yott before it was presented to the jury, he could not tell Densemo that the recording had been altered.

At the hearing, Bridges offered one exhibit, the Rule 11 plea agreement that he rejected.

**The Government's Case at the Evidentiary Hearing**

The Government called one witness: Densemo, who testified that, at the time of Bridges's trial, he had worked at the Federal Defender's Office for approximately 23 years and had conducted at least fifty criminal trials. Densemo stated that, throughout Bridges's case, Bridges was fully engaged, and even did independent legal research, which Densemo sometimes incorporated into filings. Densemo agreed that Bridges had asked him to investigate Neese's possible bias, but stated

7

that he had done so by contacting the Sheriff's Department to get any dash-cam footage and dispatch records related to Neese's contacts with Bridges. Densemo stated that he received some records, but that most of the alleged incidents could not be substantiated. Densemo also testified that he did not have Bridges's cell phone during the trial, and that Neese had denied that the alleged text exchange occurred, so he could not further investigate the text messages.

Densemo also testified that he advised Bridges to accept the Rule 11 offer, but that Bridges did not want to waive his right to appeal the suppression issue. Densemo stated that, as an experienced criminal defense attorney, he did not—and would never—give his client a percentage of their chance of success on appeal. Densemo testified that he told Bridges the suppression issue was worth pursuing on appeal but that he "had a slim chance to win at trial."

Densemo stated that, after Bridges rejected the Rule 11, he negotiated the offer of a conditional plea that would allow Bridges to appeal the suppression issue and receive acceptance of responsibility credit. Densemo asserted that he reviewed all of the terms and sentencing consequences of both plea offers with Bridges. Densemo stated that Bridges rejected both offers and told him that he "was prepared to deal with whatever the number was" if he was convicted at trial.

Finally, Densemo testified that he advised Bridges to not present a defense at trial because, based on his research, he thought that the Court might give him acceptance of responsibility credit if it was clear that he was going to trial only to preserve his right to appeal the suppression issue.

**Findings of Fact and Conclusions of Law[1]**

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

8

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for the this Court to assess credibility, having considered the exhibit submitted by Bridges, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law as to Bridges's ineffective assistance of counsel claim.

**Findings of Fact**

At the outset, the Court finds Densemo to be a highly credible witness, who offered testimony that was consistent with other record evidence. The Court also finds that Bridges's testimony was not credible.

The Court finds that, Densemo investigated Neese's possible bias to the extent that any evidence was available. He sought dash-cam video and dispatch records from the Sheriff's Department. He asked Neese about any text messages and his relationship with Bridges. He could not readily seek more detailed phone records because he was not in possession of Bridges's phone before or during the trial. Although Bridges might think that Densemo's investigation should have been more fruitful, that does not mean that it did not occur.

The Court also finds that Densemo advised Bridges to take both plea offers after fully explaining the terms of each. Densemo told Bridges that he had a good argument on appeal of the suppression motion, but did not tell him that he had a near certainty of winning. He also told Bridges that, if he went to trial solely to preserve his right to appeal the suppression motion, the Court *might* give him acceptance of responsibility credit.

**Conclusions of Law**

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 688 (1984) governs this

9

Court's analysis of ineffective assistance of counsel claims. "In *Strickland*, the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction . . . ." *Lint v. Preselnik*, 542 Fed. App'x 472, 475 (6th Cir. 2013). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish deficient performance, Bridges must show that Densemo's "representation fell below the objective standard of reasonableness." *Lint,* 542 Fed. App'x at 475 (citing *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential, and this Court must apply the strong presumption that counsel's representation fell within the wide range of reasonable professional conduct. *Lint,* 542 Fed. App'x at 475-76 (citing *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, Bridges must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and internal quotations omitted).

To establish prejudice, Bridges must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Lint*, 542 Fed. App'x at 476 (citing *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)).

**Failure to Investigate for Suppression Hearing**

Bridges argues that Densemo's failure to investigate Neese's bias rendered his representation

ineffective at both the suppression hearing and trial. But, Densemo did investigate Bridges's story by seeking dash-cam footage and police records and questioning Neese. When these available avenues proved fruitless, Densemo decided to focus on other arguments. Densemo cannot be faulted for this strategic choice.[2]

Moreover, even if Neese had a bias against Bridges, this would not have invalidated the stop. Justifying a *Terry* stop is an objective inquiry, and Neese's subjective intent at the time of the stop is irrelevant. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (stating that an action is reasonable for Fourth Amendment purposes if it is objectively justified "whatever the subjective intent motivating the relevant officials."). At the suppression hearing, the Court found that Neese's testimony was "highly credible" and that several objective reasons justified his stop of Bridges. The Sixth Circuit affirmed this decision. The Court is not persuaded that, if Densemo had provided evidence of Neese's bias at the suppression hearing for impeachment purposes—the only way it could have possibly been relevant—that there is a substantial likelihood that the Court would have granted Bridges's motion. Thus, Bridges has failed to establish that he was prejudiced by Densemo's alleged failure to investigate Neese's bias.

**Failure to Investigate or Prepare a Defense for Trial**

Bridges argues that Densemo's allegedly unilateral decision to not investigate or present a defense at trial, in hopes of getting credit for acceptance of responsibility, was ineffective. Specifically, Bridges argues that Densemo did not adequately prepare him to testify, and did not show him the allegedly altered footage from the Yott interview.

---

[2]Further, Bridges has not shown that any of the specified evidence actually exists, and Densemo cannot be blamed for failing to obtain ostensibly non-existent evidence.

Bridges fails to show how the outcome of his trial could have been different if Densemo had spent more time preparing him to testify or had shown him the Yott footage before trial. Bridges admits that Densemo did, in fact, prepare him to testify, and does not say how his testimony would have changed if Densemo had spent more time on these preparations. Bridges also asserts that, during the Yott interview, he was joking when he made his admissions. This "just joking" defense was raised during Bridges's testimony at trial and the jury was able to assess his demeanor on the witness stand and on the tape.[3] Moreover, neither of these alleged deficiencies explain away the stolen handguns, ammunition, or cocaine. Thus, the Court is not persuaded that there is a substantial likelihood that Bridges would not have been convicted if Densemo had better prepared him to testify or had shown him the Yott footage before trial.

Bridges also argues that Densemo failed to present any type of defense at trial, confident of an appellate victory on the suppression issue. But the record contradicts this view. Throughout the trial, Densemo repeatedly objected to the Government's questioning, vigorously cross-examined witnesses, and argued that the Government had failed to meet its burden of proof.[4] He even questioned Neese and Bridges about any prior interactions and possible bias. Thus, the, Court concludes that, contrary to Bridges's assertions, Densemo investigated and litigated this case competently and to the fullest extent that the facts allowed.

**Plea Offers**

---

[3]Also, Bridges offers no evidence that the Yott footage actually was altered, other than his own assertions.

[4]Densemo's efforts included a plausible, but unsuccessful, argument that the Government had failed to offer any evidence that the items in Bridges's possession were actually guns and ammunition.

Bridges alleges that Densemo provided ineffective assistance of counsel in the plea bargaining process by failing to explain the terms of the plea deals, telling him that he was sure to win on appeal, and advising him that he would still get acceptance of responsibility points if he went to trial.

All of Bridges's assertions are belied by the record and the Court's findings of fact. Densemo testified that he fully explained the terms of both plea offers to Bridges.[5] Densemo also testified that he told Bridges that he had a good case on appeal—far from the virtual guarantee that Bridges alleged was made. Finally, Densemo testified that he thought the Court *might* award acceptance of responsibility points, not that it was a certainty. The Court credits this testimony and finds that Bridges's assertions are unconvincing

One more aspect of Bridges's plea-offer argument deserves mention. Bridges attempts to show prejudice by asserting that, absent Densemo's poor advice, there was no rational reason for him to forego the plea offers and go to trial. But there was at least one reason to go to trial: Bridges likely hoped that he could beat the case entirely. Bridges might have calculated that this chance of acquittal was worth missing out on the acceptance of responsibility credit. This scenario aligns with Densemo's testimony that, after he talked to Bridges about the relevant guidelines range, Bridges was "prepared to deal with whatever the number was" if convicted at trial.

The record shows that Bridges knowingly, voluntarily, and intelligently rejected both plea offers, with a full understanding of the consequences of his decisions. (ECF No. 59). Thus, the Court finds that Bridges has failed to show that Densemo provided ineffective assistance of counsel

---

[5]Further, Densemo reiterated the terms of the plea offers to Bridges at the Court's May 2, 2014 Status Conference. (ECF No. 59, PageID 897-898).

in the plea bargaining process.

**Densemo's Advice about Acceptance of Responsibility**

Bridges asserts that Densemo advised him that he would get acceptance of responsibility credit at sentencing, even if he contested guilt at trial. Bridges alleges that he relied on this advice when he rejected the plea deals and at trial.

Densemo testified that, based on his legal research, he believed that the Court *might* award acceptance of responsibility credit if Bridges made it clear that he was going to trial only to preserve his appeal. Without reaching the merits of Densemo's belief, the Court concludes that Bridges has failed to show that, if Densemo had not given this advice, he would have accepted the plea offers or received a better outcome at trial. Densemo testified that Bridges was "comfortable with whatever the number was," and it appears that Bridges decided that some chance of acquittal was worth forgoing the sentence reduction he might have received for accepting responsibility. Moreover, even if Densemo was right, Bridges disregarded this advice when he decided to testify. Thus, Bridges cannot show that he was prejudiced by Densemo's allegedly deficient advice because he did not follow it.

**Conclusion for Ineffective Assistance of Counsel Claim**

For the reasons above, the Court finds that Bridges has failed to show that Densemo's performance was deficient or that he was prejudiced. Thus, Bridges's ineffective assistance of counsel claim is meritless.

**II.     Claim Under *Mathis***

When Bridges was proceeding *pro se*, he filed a motion for leave to supplement his § 2255 motion, seeking to raise a claim under *Mathis v. United States*, 136 S.Ct. 2243 (2016). (ECF No.

83). The Court GRANTS leave but finds that this argument is meritless.

In *Mathis*, the Supreme Court held that a prior conviction does not qualify as the generic form of a violent offense if an element of the crime is broader than the element of the generic offense because the crime enumerates various alternative factual means of satisfying a single element. Bridges appears to argue that, by this reasoning, his prior conviction under Michigan's armed robbery statute cannot constitute a violent felony for the purpose of determining the appropriate Guidelines range at sentencing. However, this argument is foreclosed by the Sixth Circuit's decision in *United States v. Tibbs,* 685 Fed.Appx. 456, 461 (2017), wherein it held that Michigan's armed robbery statute "fits within the residual clause of the Guidelines."

## CONCLUSION & ORDER

For the reasons set forth above, the Court concludes that Bridges is not entitled to habeas relief. Therefore, **IT IS ORDERED** that Bridges's § 2255 motion (ECF No. 77) is **DENIED.**

A certificate of appealability must issue before a petitioner such as Bridges may appeal the district court's denial of his § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b).

Section 2253 provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). As the United States Supreme Court has explained this standard:

> . . . the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). As the Court has more recently stated, "[w]here a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a certificate of appealability is issued by a district court, it must indicate which specific issue or issues satisfy the required showing. 28 U.S.C. § 2253(c)(3).

Here, the Court concludes that reasonable jurists would not find the Court's assessment of Bridges's claims debatable or wrong. The Court therefore **DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY.**

**IT IS SO ORDERED**.

Dated: January 14, 2019             s/Sean F. Cox
                                                   Sean F. Cox
                                                   U. S. District Judge

I hereby certify that on January 14, 2019, the foregoing document was served on counsel of record via electronic means and upon Walter Bridges, Jr. via First Class mail at the address below:

Walter Louis Bridges, Jr. 49567039
ELKTON FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 10
LISBON, OH 44432

                                                   s/J. McCoy
                                                   Case Manager